### BRENHAM COMMUNITY PROTECTIVE ASSOCIATION, Plaintiff,

v.

### UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendant.

No. A–94–CA–317–SC.

United States District Court,
W.D. Texas,
Austin Division.

July 24, 1995.

Booker T. Hogan, Jr., Law Offices of B.T. Hogan, Jr., Brenham, TX, for plaintiff Brenham Community Protective Ass'n.

Daria J. Zane, U.S. Dept. of Justice, Environmental and Natural Resources Div., Gen. Litigation Section, Washington, DC and Michaelyn Giebler, Office of Gen. Counsel, U.S. Dept. of Agriculture, Temple, TX, for defendants USDA, Farmers Home Admin., Neal Sox Johnson, and Robert Faris.

Robert E. Morse, III, Crain, Caton & James, Houston, TX, for defendants Larry C. Washburn and Brenham Rural Housing, Ltd.

*MEMORANDUM OPINION AND ORDER*

CAPELLE, United States Magistrate Judge.

The Court now considers **Defendants Larry C. Washburn and Brenham Rural Housing, Ltd.'s Motion for Summary Judgment,** filed January 18, 1995 (Doc. # 52) and **Federal Defendants' Motion for Summary Judgment,** filed February 15, 1995 (Doc. # 68). All parties consented to this Court's jurisdiction under 28 U.S.C. § 636(c).

As the discussion below details, the Court finds that Defendants are entitled to judg-

ment as a matter of law on the first two causes of action in Plaintiff's complaint. The Court will consider in a separate order Federal Defendants' Motion for Summary Judgment on the third cause of action.

## I. Background

Brenham Community Protective Association (BCPA or Plaintiff)[1] is a non-profit organization, incorporated under the Texas Non-Profit Corporation Act. Plaintiff's membership includes persons owning property in the Alcorn Addition to the City of Brenham.

Defendant Larry C. Washburn is a general partner in co-defendant Brenham Rural Housing, Ltd., a limited partnership (BRH; hereafter, Washburn and BRH are referred to as Private Defendants). On January 22, 1990, BRH filed a Preapplication for Federal Assistance with defendant Farmers Home Administration (FmHA), an agency of defendant Department of Agriculture (DoA), to finance an FmHA Section 515 Plan II senior citizen apartment complex. *See* Administrative Record (AR), Item 2. Private Defendants sought an FmHA loan to build a forty-four unit complex near property owned by members of plaintiff BCPA.

As part of the preapplication process, Private Defendants completed Form FmHA 1940–20, "Request for Environmental Information." *See* AR, Item 11. As required by regulations governing the National Environmental Protection Act (NEPA), 42 U.S.C. § 4321 et seq., promulgated by the Council on Environmental Quality (CEQ), 40 C.F.R. § 1508, and Farmers Home Administration, 7 C.F.R. § 1940.312(a)(1), FmHA prepared an Environmental Assessment (EA). FmHA consulted with the Brazos Valley Development Council and the Texas Historical Commission during this process. *See* AR, Items 5, 12, and 14.

On August 30, 1990, Defendant Robert H. Faris (Faris), District Director for FmHA District Fourteen (which includes Brenham), recommended approval of a thirty-two unit elderly complex in Brenham, TX. *See* AR,

---

1. Due to the multitude of abbreviations, acronyms, and pseudonyms used in this memorandum, the Court has included an appendix of abbreviations at the end of this document to aid the reader.

Item 15. This recommendation included a review of the Private Defendants' eligibility, the project's feasibility, and the potential priority for loan funds pursuant to 7 C.F.R. § 1944.231. Faris personally inspected the site and found no potential environmental impacts, "such as wet-lands [sic], flood plains, prime or unique farm lands[,] or other sensitive environmental features." *See* AR, Item 15. Upon review of a professional market survey conducted by a third party, Faris found a need for thirty-two Rental Assistance units [2] (as opposed to the forty-four units sought by Private Defendants) in Brenham. Faris found that the Market Survey complied with FmHA Exhibit A–6, II B–H, and Exhibit A–7. *See* AR, Item 15.

On July 26, 1991, Private Defendants requested ten additional Rental Assistance units for the complex. *See* AR, Item 18. On July 29, 1991, after reviewing the market study and conducting personal interviews, Director Faris found a need for forty Rental Assistance units, thus recommending FmHA provide rental assistance for 90% of the proposed elderly complex. *See* AR, Item 19.

Private Defendants then filed a formal application for federal assistance on August 12, 1991. *See* AR, Item 20. FmHA issued a Finding of No Significant Impact (FONSI) [3] on September 12, 1991. The agency published notice of the FONSI in the *Brenham Banner–Press*, the local newspaper, on September 9, 10, and 11, 1991. *See* AR, Items 22 and 23. On October 17, 1991, District Director Faris recommended approval of a Section 515 Loan for the entire forty-four unit project. *See* AR, Item 26.

However, beginning in September, 1991, members of the Brenham community began expressing opposition to the senior citizen complex. Brenham's Mayor Pro Tempore wrote FmHA State Director Neal Sox Johnson (a Defendant) and relayed to him concerns of local community members, noting

that seventy-eight people had signed a petition opposing construction of the complex next to their neighborhood. *See* AR, Item 24.

As a result of this and many other written comments opposing the plan, FmHA decided to hold a public information meeting pursuant to 7 C.F.R. § 1940.318(e). FmHA chose this forum to allow citizens the opportunity to discuss the proposed development prior to final action on the loan. *See* AR, Item 36. FmHA held the meeting on December 16, 1991. Defendant Larry C. Washburn, several representatives of FmHA, the Mayor of Brenham, and a member of the Brenham City Council attended, as did 50 citizens of the community. *See* AR, Item 40. The citizens expressed their concern about the effects of placing such a development in their neighborhood, such as increased crime and increased problems with drugs. They pointed to similar problems accompanying the five low income housing projects in Brenham sponsored by the Department of Housing and Urban Development [4] (HUD).

Defendants noted the concerns of the housing opponents. The FmHA representatives at the meeting recommended that a thorough review of all findings precede the final environmental determination and the final decision whether to grant a loan. *See* AR, Item 40.

Private Defendants formally applied again for a Rural Rental Housing Section 515 loan on December 28, 1991. *See* AR, Item 43. Meanwhile, FmHA prepared an Addendum to its Environmental Assessment in an effort to address the concerns raised at the public meeting. *See* AR, Item 46. The AR dates the Addendum April 16, 1992. Issues addressed by the document include:

(1) location of the development;

(2) possible toxic waste contamination from a hospital formerly located on the site;

---

**2.** Rental Assistance units are those for which FmHA will provide rent subsidies. *See* 7 C.F.R. Part 1930 Subpart C, Exhibit B, ¶ II Definitions and ¶ IVB.

**3.** A FONSI is a document that briefly presents the reasons why an action will not have a significant effect on the human environment and for

which an Environmental Impact Statement (EIS) will not be prepared. *See* 40 C.F.R. 1508.13.

**4.** Currently, there are no FmHA rental properties in Brenham, so the only comparable federally sponsored sites in Brenham are the HUD sites.

(3) fire hazards created by the new complex;

(4) traffic problems;

(5) site size; and

(6) alternate locations.

Based on the original Environmental Assessment (EA) and its Addendum, FmHA confirmed its Finding of No Significant Impact (FONSI). FmHA had the FONSI published in the *Brenham Banner–Press* on June 2, 1992. *See* AR, Item 54.

On June 4, 1992, District Director Faris recommended approval of the FmHA loan. *See* AR, Item 53. FmHA approved the loan June 17, 1992, for $1,131,000.00. *See* AR, Item 58.

Members of the community opposed to this development did not give up despite approval of the loan. Opponents of the complex wrote their congressional representatives [5]; senators [6]; state representative [7]; the State Director of the Farmers Home Administration, M.J. Pena; and even Henry Cisneros, Secretary of Housing and Urban Development, to express their concerns and to block construction of the project. (The Administrative Record does not show whether Plaintiff's representatives contacted the Secretary of Agriculture, the cabinet officer who would have authority over FmHA.) Community members presented a petition, with seventy-six signatures, opposing construction of the project to various officials. *See* AR, Item 64.

Believing it had exhausted all administrative options, Plaintiff Brenham Community Protective Association filed suit May 4, 1994. Plaintiff's complaint states the following causes of action:

*Count I:* Failure to prepare an adequate Environmental Assessment in violation of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4321 et seq., and regulations promulgated to ad-

minister NEPA's mandates, 7 C.F.R. § 1940 et seq.

*Count II:* Failure to consult with federal, state, and local officials and to hold public hearings, in violation of 7 C.F.R. § 1940.318(b) and (e); and

*Count III:* Request to set aside a wrongful administrative decision.

As a result of several previous procedural orders, Private Defendants are not parties to Counts II and III. In addition to seeking declaratory relief, Plaintiff asks the court to enjoin the DoA and FmHA from funding the apartment complex and to enjoin permanently all defendants from beginning or continuing construction of the development in question. Plaintiff also seeks attorney's fees and costs.

All parties consented to the jurisdiction of the United States Federal Magistrate Court to proceed over all aspects of this trial, pursuant to 28 U.S.C. § 636(c), on November 14, 1994. Defendants FmHA, DoA, Neal Sox Johnson, and Robert Faris (the Federal Defendants) filed a motion for summary judgment as to Count III October 17, 1994.[8] The Federal Defendants later filed a motion for summary judgment on the remaining causes of action contained in the complaint on February 15, 1995. Private Defendants filed a similar motion for summary judgment on January 18, 1995. The Court heard arguments from all parties on these motions June 8, 1995.

## II. Applicable Law

A. *The Court's Role in Review of Actions Brought Under the National Environmental Protection Act.*

◼ Plaintiff seeks to set aside a federal agency action under Section Ten of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. The APA provides that federal courts should uphold actions by a federal agency unless the courts find the acts "arbi-

---

**5.** Members of BCPA wrote Congressmen Jack Fields and Greg Laughlin.

**6.** BCPA members, at various times wrote Texas Senators Lloyd Bentsen (prior to his retirement from the Senate), Phil Gramm, and Kay Bailey Hutchison (after her election to replace Sen. Bentsen).

**7.** Texas Representative Dan Kubiak.

**8.** The court will consider this motion in a separate order.

trary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). This 'arbitrary and capricious' standard of review applies to actions arising under the National Environmental Protection Act (NEPA). *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 375–76, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989).

When reviewing actions under NEPA where disputes primarily involve issues of fact and analysis of relevant documents requiring a high level of technical expertise, the Court should defer to the informed discretion of the responsible federal agencies. *Marsh,* 490 U.S. at 377, 109 S.Ct. at 1861 (quoting *Kleppe v. Sierra Club,* 427 U.S. 390, 412, 96 S.Ct. 2718, 2731, 49 L.Ed.2d 576 (1976)). Despite conflicting views of specialists, "an agency must have discretion to rely on the reasonable opinions of its own qualified experts," even though the court might find a view contrary to the agency's ultimate decision more persuasive. *Marsh,* 490 U.S. at 378, 109 S.Ct. at 1861. Under the "arbitrary and capricious" standard of review for actions governed by NEPA, the court must confine its review of the agency's decision to the administrative record. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

NEPA mandates inclusion of an Environmental Impact Statement (EIS) in every report or recommendation regarding *major* federal actions [9] affecting the environment in a significant manner. *See* 42 U.S.C. § 4332(C). However, NEPA only prescribes the necessary process, and does not mandate specific substantive results. *See Strycker's Bay Neighborhood Council, Inc. v. Karlen,* 444 U.S. 223, 227–28, 100 S.Ct. 497, 499–500, 62 L.Ed.2d 433 (1980). Where adverse environmental effects of the proposed action are adequately identified and evaluated, NEPA does not prohibit a decision that other factors outweigh costs to the environment. *See Rob-*

*ertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 1845–46, 104 L.Ed.2d 351 (1989). So long as the agency has properly considered perceived adverse environmental effects, NEPA does not provide any basis to enjoin federal action based on those effects. *Association Concerned About Tomorrow, Inc. v. Dole,* 610 F.Supp. 1101 (N.D.Tex.1985); *D'Agnillo v. U.S. Dept. of Housing and Urban Development,* 738 F.Supp. 1454 (S.D.N.Y.1990).

The Council on Environmental Quality (CEQ), charged with overseeing implementation of NEPA, has developed regulations governing NEPA procedural provisions. Under these regulations, federal agencies must prepare an Environmental Assessment (EA) in order to provide sufficient evidence and analysis for determining whether to prepare an EIS or a FONSI. *See* 40 C.F.R. § 1508.9(a)(1). Agencies can comply with NEPA by producing an EA where the EA shows that an EIS is unnecessary. *See* 40 C.F.R. § 1508.9(a)(2).

Because Plaintiff seeks to set aside the decision by FmHA to grant federal assistance to Private Defendants and not to prepare an EIS, the Court sits as an appellate court under an arbitrary and capricious standard of review. The Court cannot reconsider anew the factors leading to the loan or weigh the evidence supporting or contradicting FmHA's decision. Rather than a trial *de novo,* this Court only reviews whether the agency's decisions had evidentiary support. The Court will only deem those decisions having little or no evidentiary support as arbitrary and capricious. Whether or not the court would have decided similarly is immaterial, so long as the agency considered all relevant factors and had evidence supporting its decision. Thus, the Plaintiff's burden in this case is to show on each count that either:

> (1) Defendants had *no* evidence to support the decision not to produce an EIS or to grant a loan; or

9. Federal regulations define "major federal action" as including federally assisted construction projects that may have a major effect. *See* 40 C.F.R. § 1508.18(b)(4). "Major federal actions" do not have a meaning independent of "signifi-

cant." *See* 40 C.F.R. § 1508.18. In determining whether an action is significant, an agency must look at the context (society, affected region and interests) and intensity (severity of impact). *See* 40 C.F.R. § 1508.27.

(2) Defendants disregarded or ignored a factor required for making the decision.

## B. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to summary judgment as a matter of law." Rule 56(e) states: "When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial."

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense; however, where the movant does not bear the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a sufficient showing to establish the existence of elements essential to its case. *Id.* at 322–23, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses by affidavits or by " 'depositions, answers to interrogatories and admissions on file,' designat[ing] 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. The non-moving party with the burden of proof must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed.R.Civ.P. 56(e); *Tubacex v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If no such evidence is produced, "[t]he moving party is entitled to a judgment as a matter of law." *Id.* at 323, 106 S.Ct. at 2552.

In deciding whether to grant summary judgment, the court should view the *evidence* in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994) (emphasis added); *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

The Court must substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) A fact question is "material" if it involves "disputes over facts that might effect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510; *Burgos,* 20 F.3d at 635. Thus, the focus of the Court is upon disputes over material facts as supported by the evidence submitted by the parties.

The material fact dispute must be such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356).

## C. Summary of the Law For This Case

In this suit, Plaintiff bears the burden of proving that the decision to forego producing an EIS and to grant an FmHA loan was arbitrary and capricious. The court's review of the agency action is limited to the Administrative Record. Under the rules of summary judgment, Plaintiff, as the non-movant with the burden of proof at trial, must bring

forth factual evidence which, if produced at trial, could produce a verdict for Plaintiff. So, Plaintiff must produce affidavits, depositions, interrogatories, or other evidentiary items that would carry its trial burden of showing that:

(1) Defendants had little or no evidence to support their decision to grant assistance without an EIS; or

(2) Defendants ignored or disregarded a relevant factor in making their decision.

### III. Discussion

*A. Summary of Plaintiff's Claims on Counts I and II*

Plaintiff styles its first cause of action as "Failure to Prepare Adequate Environmental Assessment." Under this count, Plaintiff alleges that:

(1) Instead of developing an independent EA, FmHA relied on an EA "prepared and submitted to it by Defendant LARRY WASHBURN." Plaintiff's Amended Complaint at 7;

(2) Defendant FmHA failed to consult with appropriate Federal, State, and Local officials regarding the proposed complex and failed to document discussion with appropriate officials prior to publishing the FONSI on June 2, 1992;

(3) No evidence shows that FmHA considered the following "environmental" factors:

(a) the effects of concentrating indigent people in a small area, or

(b) the historically higher expenditure of resources by the Brenham Police Department in areas containing public assisted housing;

(4) The EA summarily rejected the potential adverse environmental effects of noise, traffic, and drug related criminal activities on the health and safety of the community;

(5) The EA incorrectly states that the forty-four unit project will have no adverse effect on the solid waste disposal facilities and the water system of the City of Brenham and Washington County; and

(6) Contrary to the EA, there is no local need for assisted housing for the elderly.

As a result of the allegedly faulty EA, Plaintiff claims that Defendants incorrectly decided against preparing an EIS. According to Plaintiff, allowing Defendants to proceed would effectively concentrate indigents in the neighborhood, adversely affecting the environment and lowering property value.

Plaintiff titles its second cause of action [10] "Failure to Follow Agency Procedures and Hold Public Hearings." Here, Plaintiff reasserts its claim that FmHA failed to consult with appropriate federal, state, and local officials as required by 7 C.F.R. § 1940.318(b).[11] Additionally, Plaintiff alleges that FmHA failed to hold a public hearing, pursuant to 7 C.F.R. § 1940.318(e) [12], prior to giving tenta-

---

**10.** Private Defendants Larry C. Washburn and Brenham Rural Housing, Ltd. are not parties to this cause of action.

**11.** 7 C.F.R. § 1940.318 provides in part:
(b) Once adequate data has been obtained, the assessment will be initiated in the format and manner described in exhibit H of this subpart. In completing the assessment, appropriate experts from State and Federal agencies, universities, [and] local and private groups will be contacted as necessary for their views. In so doing, the preparer should communicate with these agencies or parties in the most appropriate and expeditious manner possible, depending upon the seriousness of the potential impacts and the need for formal documentation. Appropriate experts must be contacted whenever required by a specific provision of this subpart or whenever the preparer does not have sufficient data or expertise available with-

in FmHA to adequately assess the degree of a potential impact or the need for avoidance or mitigation. Comments from an expert must be obtained in writing whenever required by a specific provision of this subpart or the potential environmental impact is either controversial, complex, major, or apparently major. When correspondence is exchanged, it will be appended to the assessment. Oral discussions should be documented in the manner indicated in exhibit H of this subpart. On the other hand, there is no need for the preparer to seek expert views outside of the Agency when there is no specific requirement to do so and the preparer has sufficient expertise available within FmHA to assess the degree of the potential impact and the need for avoidance or mitigation.

**12.** 7 C.F.R. § 1940.318 provides in part:
(e) For actions having a variety of complex or interrelated impacts that are difficult for the

tive approval for the new complex. Plaintiff claims that the Finding of No Significant Impact issued by FmHA was a final decision wrongfully made prior to the public hearing. Plaintiff claims that Federal Defendants' failure to follow federal guidelines "resulted in an improvident decision that is not supported by evidence." Plaintiff's Amended Complaint at 12.

Plaintiff claims no adequate remedy at law for the alleged transgressions cited in counts I and II. Plaintiff asks the Court to enjoin Defendants from building and operating the proposed low-income apartment complex on the currently planned site.

### B. Defendants' Answers and Motions for Summary Judgment

Private and Federal Defendants all generally deny the allegations in Plaintiff's complaint. Both Private and Federal Defendants have filed separate Motions for Summary Judgment as to counts I and II.[13]

To Plaintiff's allegations in Count I, Defendants respond:

(1) FmHA produced an independent EA, as well as an Addendum, which both appear in the AR (Items 46 and 47).

(2) Defendants consulted at least two other agencies (the Brazos Valley Development Council and the Texas Historical Commission) regarding the proposed complex.

(3) The EA addresses population density concerns to the extent required by law. Defendants cite *Glass Packaging Institute v. Regan*, 737 F.2d 1083, 1092 (D.C.Cir.1994) in support of their position that concentration of indigents is not an environmental factor compelling production of an EIS. Defendants

argue that a modest project such as the forty-four unit complex proposed by Defendants cannot significantly affect the population of the community. As for Plaintiff's claim that the EA fails to consider the potential affects of a low-income apartment complex on the police department's resources, Defendant notes that police expenditures are not environmental concerns requiring an EIS. The broader issue of crime is addressed in the Addendum to the EA.

(4) The EA addresses issues of noise and traffic at IV. 5, 8, and 10; the Addendum addresses these issues at items 3 and 4. The Addendum discusses the issue of drug-related crime at item 1. FmHA also received and considered related comments regarding these issues in responsive correspondence and at the public meeting held on December 14, 1991.

(5) The FmHA did consider the effects this complex would have on solid waste management and the water system in the EA at ¶ IV. 3 and ¶ IV. 2, respectively.

(6) The issue of need for low-income, elderly housing is not an environmental impact warranting development of an EIS.

Additionally, Defendants argue that the issue of the complex's effect on property value in the area is also not an environmental impact covered by NEPA.

To Plaintiff's claims in Count II, Defendants respond:

(1) As noted above, FmHA did consult with local officials and held a public meeting to discuss the complex prior to final approval.

(2) FmHA issued the FONSI based on the EA and its Addendum and took into consideration comments and concerns of the public

preparer to assess, consideration should be given to holding a public meeting in the manner described in § 1940.331(c) of this subpart. Such meetings should not be assumed as being limited to projects for which EISs are being prepared. Such a meeting can serve a useful purpose in better defining and identifying complex impacts, as well as locating expertise with respect to them. The results of a public meeting and the follow-up from it can also serve as a valuable tool in reaching an early understanding on the potential need for an EIS. When identified impacts are difficult to quantify (such as odor and visual and community

impacts) or controversial, a public information meeting should be held near the project site and the local area's [sic] concern about it. Whenever held, it should be announced and organized in the manner described in § 1940.331(c). However, a transcript of the meeting need not be prepared, but the preparer will make detailed notes for incorporation in the assessment.

**13.** Federal Defendants' separate Motion for Summary Judgment on Count III is considered under a separate order.

and local officials transmitted to the agency. These comments and concerns appear in the AR in responsive correspondence with various federal, state, and local representatives.

## C. Findings

Plaintiff does not submit much in the form of evidence to counter Defendants' Motions for Summary Judgment. Rather than embrace its burden and submit evidence which would produce a favorable verdict at trial, Plaintiff responds with attacks on the Defendants's motions, claiming that the motions do not "show there are no triable issues of facts" regarding Plaintiff's claims. Thus, whatever evidence would serve to support Plaintiff's claims must come from the AR, which Defendants submitted in support of their motions. Plaintiff did submit two unnotarized "Declarations" with its responsive memoranda, and the Court does consider them as evidence in the narrow circumstances in which they apply.[14]

### 1. Plaintiff's First Cause of Action

#### a. Plaintiff's first claim on count I

Plaintiff fails to carry its burden on Count I. Plaintiff brings no evidence in support of its claim that FmHA did not prepare an independent EA. Defendants have submitted the EA upon which FmHA decided to issue a FONSI and to forego preparation of an EIS. As Plaintiff has made no evidentiary showing that the EA was not prepared independently, the Court finds as a matter of law that Defendant FmHA prepared an independent EA.

#### b. Plaintiff's second claim on count I

■ Plaintiff's second claim in count I is that FmHA failed to consult with appropriate federal, state, and local agencies. Specifically, Plaintiff asserts in its Reply that, as shown by the AR, FmHA did not consult with the Mayor of Brenham, the Brenham City Council, the Brenham Planning Commission, the Director of the Brenham Housing Authority, and the Department of Housing and Urban Development. Plaintiff cites no law or regulation requiring consultation with these specific authorities. The AR shows that at least two members of the Brenham City Council have been involved in the public discussion of this proposed complex. The Mayor Pro Tempore has worked with many opponents of the project in expressing their displeasure, and Councilman Rodney Williams attended the public information meeting held regarding the proposed complex. Mayor Robert Appel, Jr. also attended the meeting and discussed in writing community opposition to the proposal with a local congressman. According to the AR, the site in question is zoned for multi-family dwellings, see AR, Item 46, casting further doubt on the need to consult the Brenham Planning Commission or the Director of the Brenham Housing Authority. Plaintiff cites no authority for the argument that FmHA need consult with HUD on projects such as this.

Defendants point out that FmHA did consult with two agencies: the Brazos Valley Development Council, see AR, Item 5, and the Texas Historical Commission. See AR, Item 12. In addition, the Court notes that, as counsel for Private Defendants said at oral argument, consultation does not equal consent. The AR shows that FmHA consulted the opinions of various agencies throughout the decisionmaking process. However, the regulations do not require FmHA earn their consent. The Court finds as a matter of law that FmHA did not fail to consult with appropriate federal, state, or local agencies.

#### c. Plaintiff's third claim on count I

In its third claim on count I, Plaintiff alleges that FmHA failed to consider:

(1) the effects of concentrating indigents on the environment, and

---

**14.** Defendants have not challenged the sufficiency of the "Declarations" as evidence admissible for the purposes of deciding motions for summary judgment, so the Court considers them adequate for such proceedings.

The Court is aware that under the evidentiary rules of applicable under the APA, these "Declarations" might not be admissable even if considered sufficient for purposes of deciding summary judgment. However, whether or not the Court considers these items as evidence does not change the ultimate decision the court makes. The Court's conclusions are the same whether these "Declarations" are considered as evidence or ignored.

(2) the potential need to increase police resources in areas containing public assisted housing.

In its Reply, Plaintiff further contends that the Addendum to the AR, which discusses population density concerns, is an ad hoc document designed to circumvent community objections. Plaintiff again offers no evidence to support its theory. Plaintiff claims it can show this by cross-examination without providing any depositions, answers to interrogatories, etc., to support this boast. Rule 56 requires evidence to support Plaintiff's position that it can prove its theory upon cross-examination. The Court finds as a matter of law that FmHA did sufficiently consider concentration of indigents and that the Addendum is not an ad hoc document.[15]

Similarly, Plaintiff produces no evidence in support of its claim that the apartment complex will unreasonably stress police resources, nor does Plaintiff even show authority that police expenditures are environmental considerations. The Court finds as a matter of law for Defendants on this issue.

d. Plaintiff's fourth claim on count I

Plaintiff's fourth claim alleges that FmHA summarily rejected the potential adverse environmental effects of noise, traffic, and drug related criminal activities on the health and safety of the community. However, both the EA and its Addendum address traffic and noise, and the EA addresses drug-related crime. As Defendants note, the AR is replete with correspondence concerning the impact of crime, and FmHA discussed these issues with concerned members of the community at the public information meeting.

Plaintiff claims in its reply that the statements found in the AR regarding these issues stand merely as blanket assertions unsupported by facts or surveys. Plaintiff bears the burden of producing evidence to show that FmHA made these findings without evidentiary support. Plaintiff brings no such evidence, and the AR shows Defendants did consider these issues. The Court finds as a matter of law that FmHA considered and addressed the issues of traffic, noise, and drug-related criminal activity.

e. Plaintiff's fifth claim on count I

In its fifth count I claim, Plaintiff avers that the EA incorrectly states that the forty-four unit project will have no adverse effect Brenham's solid waste disposal and water system facilities. Defendants note that the EA addresses these issues. Plaintiff replies that the statements in the EA are false, citing the unnotarized "Declaration" of Sireta Cuerington. Specifically, Ms. Cuerington claims to have discussed water system demands with Brenham water works officials, who said that during peak usage the City exceeds current capacity by about 398,000 gallons per day. Ms. Cuerington admits, however, that in reference to average water demands, the EA is correct. She also alleges that Washington County does not operate a sanitary landfill.

■ While Plaintiff, in the form of Ms. Cuerington's "Declaration", does present evidence contrary to the EA, contradictory evidence alone would not carry Plaintiff's burden at trial. Plaintiff must produce evidence that FmHA made a decision completely opposite the weight of all evidence under consideration by FmHA, or that FmHA had no evidence to support its conclusion. Regarding the water system, Plaintiff's own evidence shows that the complex would not tax the system during average use. That FmHA found this more compelling than the possible overtaxing during peak usage is not for this Court to question. The Court finds as a matter of law that FmHA did not make an arbitrary or capricious conclusion regarding water system demands.

■ As for the solid waste disposal issue, Plaintiff merely shows that Washington County does not operate such a facility. While Plaintiff may be correct on this point, the issue is immaterial for the purposes of overturning the EA, as Plaintiff does not show that other entities, such as the City of Brenham, do not operate solid waste disposal facilities, nor does Plaintiff show that such

---

**15.** The Court does not reach the broader issue of whether "concentrating" indigents is a factor requiring consideration by an agency in deciding whether to issue an EIS. Even if concentration were a factor, Plaintiff presents no evidence to show that FmHA did not consider it.

facilities cannot absorb the added waste of forty-four low-income senior citizens. The Court reasonably assumes that somehow the community disposes of solid waste. Rather than an arbitrary and capricious decision, the Court finds as a matter of law that the EA mistakenly specifies the wrong trash collection agency and that the mistake is immaterial to the ultimate disposition of the case.

#### f. Plaintiff's sixth claim on count I

In its final claim on count I, Plaintiff alleges that there is no local need for assisted housing for the elderly. Defendants argue that the need for housing is not an environmental impact requiring development of an EIS. Plaintiff replies that this issue relates to the veracity of the decision by FmHA to provide federal financial assistance.

Once again, however, Plaintiff brings no evidence that there is no need for such housing. Plaintiff contends that the Court must assume its allegation to be true because Defendants will not produce the entire Market Analysis for study by Plaintiff. Plaintiff merely alleges that no need exists and cites little evidence in support. Federal Rule of Civil Procedure 56 shows that arguments on summary judgment must go beyond the pleadings, that where a party bears a burden of proof at trial, that party must bring **evidence** to support its allegations. Ms. Cuerington, in her "Declaration" submitted by Plaintiff, refers to discussions she had with the Director of the Brenham Housing Authority and a local renter in which both claim that there is little demand for low-rent housing for elderly persons. Under the standard of review for this case, Plaintiff must show that the Defendants' decisions fly in the face of the evidence FmHA had at hand. Defendants based their decision on a favorable market analysis. Plaintiff claims in passing that Defendants have not handed over the entire study for discovery. That Defendants have not produced documents that might be privileged third-party proprietary information does not excuse Plaintiff from its burden. Plaintiff produces no market surveys of its own that might at least move the Court in the direction of doubt as to the veracity of the evidence FmHA had in hand. Nor does

Plaintiff bring evidence calling into question the expertise or ability of the private marketing firm which produced the analysis. So, the Court finds as a matter of law that FmHA did not arbitrarily or capriciously determine that local need existed for assisted housing for the elderly.

As for the further claim made in count I that property values will suffer as a result of construction of the proposed complex, Plaintiff again brings no evidence to support this claim. The Court finds for Defendants on this issue as a matter of law.

#### 2. *Plaintiff's Second Cause of Action*

As stated earlier, Plaintiff reasserts in count II its claim from count I that FmHA failed to consult with appropriate federal, state, and local officials as required by 7 C.F.R. § 1940.318(b). The Court refers back to its previous findings of law on that issue.

Plaintiff also claims in count II that FmHA failed to hold a public hearing prior to giving tentative approval for the new complex. According to Plaintiff, FmHA wrongfully decided to issue the FONSI prior to the public hearing. In its Motion for Summary Judgment, the Federal Defendants note, and the AR confirms, that FmHA did hold a public meeting to permit concerned members of the community to comment on their objections to the proposed complex. The AR shows that FmHA had the *Brenham Banner–Press* publish the final Finding of No Significant Impact on June 2, 1992. *See* AR, Item 54. FmHA conducted its public information meeting on December 16, 1991. *See* AR, Item 40. FmHA representatives recommended after the meeting that FmHA thoroughly review all of its findings before approving the loan. Nearly six months passed between the date of the meeting and publication of the FONSI. Plaintiff presents no evidence that such a review did not occur or that the final decision to grant the loan preceded the public hearing. In fact, FmHA did not approve the loan until June 17, 1992, six months and one day after the agency conducted the information meeting. The Court finds as a matter of law that the Federal Defendants held a hearing appropriate under

7 C.F.R. § 1940.318(e)[16] and that it did not decide to issue the final FONSI until after that hearing.[17] As such, the Court rejects as a matter of law Plaintiff's ultimate claim that the Federal Defendants made an improvident decision unsupported by the evidence.

## IV. Conclusion

■ As this discussion shows, Plaintiff has not carried its burden under Rule 56 of producing evidence that would result in a favorable verdict at trial. Plaintiff has to show that Defendants made arbitrary and capricious decisions regarding the various issues arising in the complaint. This is a heavy burden because Plaintiff has to do more than just show that the agency could have reached opposite conclusion. Instead, under the "arbitrary and capricious" standard of review, Plaintiff has to show that the Defendants could not have made the decisions at issue in any way with the evidence they had before them. Given the context of the proceedings—motions for summary judgment— Plaintiff had to present *evidence*—not just allegations—that would carry this difficult burden of proof at trial. Plaintiff has failed

to do so. In most instances, Plaintiff has failed to present any evidence at all to support its allegations. The AR shows that the Defendants considered the evidence they had before them, considered the factors relevant to their decision, and made reasonable decisions. It is immaterial that Plaintiff or the Court might have decided differently given the evidence.

The Court finds that the Defendants, both Private and Federal, are entitled to judgment as a matter of law as to the first two causes of action on Plaintiff's complaint. Therefore, the Court

GRANTS **Federal Defendants' Motion for Summary Judgment [On Counts I and II]**, filed February 15, 1995 (Doc. # 68);

GRANTS **Defendants Larry C. Washburn and Brenham Rural Housing, Ltd.'s Motion for Summary Judgment,** filed January 18, 1995 (Doc. # 52), and

DISMISSES WITH PREJUDICE all claims against Private Defendants LARRY C. WASHBURN AND BRENHAM RURAL HOUSING, LTD.

## APPENDIX

Abbreviations used in this opinion:

| Abbreviation | Meaning |
| --- | --- |
| APA | Administrative Procedures Act |
| AR | Administrative Record |
| BCPA | Brenham Community Protective Association (the Plaintiff) |
| BRH | Brenham Rural Housing, Ltd. |
| CEQ | Council on Environmental Quality |
| DoA | United States Department of Agriculture |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| Federal Defendants | United States Department of Agriculture; Farmers Home Administration; Neal Sox Johnson; and Robert Faris |

**16.** As FmHA did conduct a hearing, the Court does not decide the issue of whether such a meeting was actually required under the circumstances.

**17.** The Court notes that FmHA had previously issued a FONSI on September 12, 1991 and that District Director Faris recommended loan approval on October 17, 1991. The AR shows that the various FmHA officials noted the opposition to these actions and decided to hold a public meeting for the purposes of reconsidering their actions. That these previous decisions were not final becomes obvious when one considers that Private Defendants **reapplied** for the loan on December 28, 1991, twelve days **after** the meeting, even though Faris had already recommended loan approval on their initial application. Were the initial FONSI a final decision, Private Defendants would have had no need to reapply for a loan which they already likely would receive.

| Abbreviation | Meaning |
| --- | --- |
| FmHA | Farmers' Home Administration |
| FONSI | Finding of No Significant Impact |
| NEPA | National Environmental Protection Act |
| Private Defendants | Larry C. Washburn; and Brenham Rural Housing, Ltd. |